# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **RICKY DUNCAN,** | |
| **Plaintiff,** | |
| v. | |
| **BIBB COUNTY SHERIFF'S DEPARTMENT; BIBB COUNTY SHERIFF, JODY WADE; CITY OF BRENT, ALABAMA; CITY OF BRENT POLICE DEPARTMENT; CITY OF CENTREVILLE, ALABAMA; CITY OF CENTREVILLE POLICE DEPARTMENT; FICTITIOUS DEFENDANTS "A" – "C",** whether singular or plural, being those persons employed as officers for the Bibb County Sheriff's Department who performed the acts set forth below in the statement of facts; **FICTITIOUS DEFENDANTS "D" – "F",** whether singular or plural, being those persons employed as officers for the City of Brent, Alabama Police Department who performed the acts set forth below in the statement of facts; and **FICTITOUS DEFENDANTS "G" – "I",** whether singular or plural, being those persons employed as officers for the City of Centreville, Alabama Police Department who performed the acts set forth below in the statement of facts. Plaintiff currently lacks information sufficient to identify the Fictitious Defendant(s) referenced in this paragraph but will substitute their correct identities by amendment when ascertained; | **CIVIL ACTION NUMBER:** <br><br> **CV-2019-** <br><br><br> ***JURY TRIAL DEMANDED*** |
| **Defendants.** | |

**COMPLAINT**

# I. PARTIES

1. Plaintiff Ricky Duncan is an individual over the age of 19 and is a resident and citizen of the State of Alabama who is domiciled in Alabama.

2. Defendant Bibb County Sheriff's Department is an operational unit of an Alabama municipality.

3. Defendant Bibb County Sheriff, Jody Wade, is an individual over the age of 19 and is a resident and citizen of the State of Alabama. Sheriff Wade is the Sheriff of Bibb County, Alabama.

4. Defendant City of Brent, Alabama is a municipality organized under the laws of the State of Alabama.

5. Defendant City of Brent Police Department is an operational unit of an Alabama municipality.

6. Defendant City of Centreville, Alabama is a municipality organized under the laws of the State of Alabama.

7. Defendant City of Centreville Police Department is an operational unit of an Alabama municipality.

8. Fictitious Defendants "A" through "C", whether singular or plural, being those resident citizens of Alabama over the age of 19 employed as officers or deputies for the Bibb County Sheriff's Department who performed the acts set forth below in the statement of facts.

9. Fictitious Defendants "D" through "F", whether singular or plural, being those resident citizens of Alabama over the age of 19 employed as officers or deputies for the City of Brent, Alabama Police Department who performed the acts set forth below in the

2

statement of facts.

10. Fictitious Defendants "G" through "I", whether singular or plural, being those resident citizens of Alabama over the age of 19 employed as officers or deputies for the City of Centreville, Alabama Police Department who performed the acts set forth below in the statement of facts.

11. At times herein, Fictitious Defendants "A" through "I" shall collectively be referred to as the "Fictitious Defendants" and/or the Defendant "Officers".

12. At times herein, the Sheriff of Bibb County, the City of Brent, the Brent Police Department, the City of Centreville, and the Centreville Police Department shall collectively be referred to as the "Named Defendants."

13. Wherever it is alleged that a Defendant did anything, it is averred that "Defendant" acted on behalf of all Defendants collectively, including Fictitious Defendants, unless otherwise stated.

## II. JURISDICTION

14. The Plaintiff claims, in part, that the acts and/or omissions of the Defendants, jointly and severally where allowed by law, or singularly where allowed by law, proximately resulted in the Plaintiff being wrongfully denied his rights under the Fourth Amendment to the Constitution of the United States, and that the acts and/or omissions of the Defendants are violative of the Plaintiff's rights and privileges as secured by the provisions of 42 U.S.C. §1983, as more fully set forth herein. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

### III. **STATEMENT OF FACTS**

15. On March 4, 2018, Plaintiff Ricky Duncan was shot numerous times by officers and/or deputies (Fictitious Defendants "A" through "I") employed by and representing the Named Defendants.

16. On the morning of March 4, 2018. Ricky Duncan and Samantha Duncan were traveling in Ricky's step-mother's vehicle in Centreville, Alabama. Ricky Duncan was driving.

17. Ricky pulled out of the Jack's restaurant on Highway 219 and into a nearby shopping center, where he observed a Centreville police cruiser.

18. The Centreville police cruiser followed Ricky's car for a small amount of time before turning on its emergency lights, signaling for Ricky to pull-over the car.

19. Ricky pulled-over the car near the Four Points Baptist Church.

20. Ricky rolled down his window and provided the insurance information for his step mother's car to the Centreville police officer (Fictitious Defendant "G").

21. Fictitious Defendant "G" asked Ricky if he knew why he stopped him. Ricky said no. Fictitious Defendant "G" stated that the car's rear-view mirror was not properly placed; it was "too low". This pretextual excuse for pulling Ricky Duncan over is not supported by Alabama law, which does not mandate any height requirements for rear view mirrors.

22. Fictitious Defendant "G" then went back to his cruiser and, after several minutes, returned to Ricky's car and asked him to step out because there was a warrant out for him.

4

23. Fictitious Defendant "G" first told Ricky that the outstanding warrant was for non-payment of child support, but then later told him the warrant was for child neglect.

24. In fact, there were no outstanding warrants for Ricky Duncan's arrest at that time.

25. Ricky Duncan knew there were no warrants out for his arrest did not believe Fictitious Defendant "G" was being honest about the warrant.

26. Ricky Duncan, believing Fictitous Defendant "G" lacked any arresting power, told Fictitious Defendant "G" that he was leaving to eat his breakfast at his home. Ricky then drove away from the stop.

27. Fictitious Defendant "G" followed Ricky toward his home and additional law enforcement cruisers joined in behind Ricky's vehicle as well. Those additional cruisers were driven by the other officers/deputies involved, Fictitious Defendants "A" through "C", "D" through "F", and "H" and "I" (collectively referred to as the "Officers").

28. Ricky Duncan then proceeded to his brother's residence (Robert Duncan) instead, and stopped his vehicle along the road near Robert Duncan's residence.

29. When Ricky stopped the vehicle, one of the law enforcement vehicles stopped immediately to his right and two other vehicles stopped behind him.

30. At all times during the events previously described herein, Ricky Duncan possessed a pistol in his car that was unknown to the Defendants.

31. When Ricky started exiting the car after being surrounded by police cruisers, he was holding the pistol in his left hand above his head in order to show the Defendant Officers that he had a weapon and was peacefully giving himself up willingly.

5

32. As Ricky started to stand up out of the car, with his back facing the Officers and his hands above his head, he was immediately shot by one or more of the Officers. None of the Officers gave any verbal commands or warnings whatsoever before they began shooting.

33. Ricky Duncan felt something strike the back of his neck and also his left wrist and dropped the gun he was holding. Realizing he had been shot, Ricky sat back down in the car seat. Ricky, startled and bleeding, then tried to stand up again and was shot many more times before falling back into the car. In fact, many shots were fired into the car by the Officers from directly overhead.

34. It is unknown exactly how many bullets were fired at Ricky Duncan by Defendant Officers, but he was ultimately suffered six (6) gunshot wounds.

35. Samantha Duncan was in the car the entire time but was miraculously not shot.

36. Ricky Duncan never pointed the pistol at any of the Defendant Officers or any other persons; the pistol was always over his head (or on the ground after he was shot), and was never discharged.

37. After the shooting, Ricky heard one of the Officers tell the others to look around the area to make sure there was nothing "looking at" them, which Ricky understood to mean to look for any cameras that might have captured the shooting.

38. The Officers made some attempts to dress Ricky's gunshot wounds, but paramedics did not arrive until approximately one (1) hour after he was shot.

6

39. The Officers initially requested a helicopter to come and air lift Ricky to a hospital, but eventually the Officers canceled the helicopter air lift.

40. Ricky heard some of the Officers discussing his injuries and saying things like, "He's not dead yet?" and "I can't believe he hasn't bled out yet."

41. Over an hour after Ricky was shot numerous times, he was finally transported to DCH Hospital in Tuscaloosa, Alabama, where he was treated for his severe injuries cause by gunshots.

42. The force used by the Defendants was excessive and their actions violated Ricky Duncan's 4th and 14th Amendment Constitutional Rights.

43. Ricky Duncan was severely injured by the actions of the Officers.

44. As a direct and proximate result of Defendants' said actions and/or inactions, Ricky Duncan suffered injury and damage, including without limitation: (a) internal bleeding, bruising and physical pain in and about his head, legs and arms; (b) severe personal embarrassment and public humiliation; (c) severe and continuing emotional distress; (d) severe and continuing mental anguish; (e) severe and continuing episodes of nightmares concerning the incident; (f) extreme fear of uniformed law enforcement personnel, in general; (g) violation of his right to be secure in his person and to not be subjected to the use of excessive force upon and an unreasonable seizure of his person, as guaranteed under the Fourth Amendment to the Constitution of the United States; (h) violation of his rights and privileges as secured by the provisions of 42 U.S.C. §1983 and (I) violation of his right as guaranteed under the Fourteenth Amendment to the Constitution of the United States.

7

45. With regard to the subject incident: (a) Ricky Duncan committed no crime; (b) Ricky Duncan did no act while driving which would constitute probable cause for the Centreville officer, Fictitious Defendant "G", to pull him over and eventually attempt to seize his person; (c) Defendants had no valid reason or lawful justification for confronting, accusing, detaining, restraining, handcuffing and/or arresting Ricky Duncan.

## IV. CAUSES OF ACTION

### COUNT ONE: 4th AMENDMENT – EXCESSIVE USE OF FORCE

46. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

47. Defendant Officers acted "under the color of law" of the State of Alabama.

48. Rather than allowing Ricky Duncan to step out of the car with his hands up and gun in the air, as he was attempting to do, and without giving any verbal commands or warnings to Ricky Duncan, the Defendant Officers simply began shooting Ricky Duncan.

49. The Defendant Officers' use of unwarranted lethal force amounts to deliberate indifference to the 4th Amendment Constitutional rights of Ricky Duncan.

50. The Defendant Officers escalated the situation and needlessly created any alleged need for deadly force.

51. Based on these facts, the Defendant Officers ("Fictitious Defendants") acted with deliberate indifference to Ricky Duncan's 4th Amendment Constitutional rights, and such actions must be analyzed under the 4th Amendment's prohibition against unreasonable searches and seizures.

52. The conduct of Defendants: (a) caused and constituted an excessive use of force upon, and an unreasonable seizure of, Ricky Duncan in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States; and (b) caused and constituted a deprivation of Ricky Duncan's rights and privileges as secured by the provisions of 42 U.S.C. § 1983.

53. As a direct and proximate result of the excessive force, Plaintiff suffered damages.

## COUNT TWO: FAILURE TO TRAIN AND SUPERVISE

54. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

55. The Named Defendants, Sheriff of Bibb County, the City of Brent, the Brent Police Department, the City of Centreville, and the Centreville Police Department, had a duty to properly train their respective officers and/or deputies.

56. The Named Defendants knew, or should have known, that their officers/deputies would encounter situations where a person was armed and attempting to give themselves up peacefully while not acting in a threatening manner.

57. Named Defendants failed to properly train and supervise their respective employees on the appropriate circumstances to use deadly force.

58. The decision by the Defendant Officers (Fictitious Defendants "A" through "I") to shoot Ricky Duncan while he was attempting to peacefully give himself up, without warning or other verbal commands, is a direct result of the Named Defendants' failures to properly train and supervise their respective employees on the proper use of deadly force.

9

59. The decision by the Defendant Officers (Fictitious Defendants "A" through "I") to cancel the helicopter air-lift, that was originally called to provide paramedic services to Ricky Duncan, is a direct result of the Named Defendants' failures to properly train and supervise their respective employees on the proper use of emergency care for those injured by their use of deadly force.

60. Named Defendants' failure to properly train their respective employees on the appropriate circumstances to use deadly force, and on the proper use of emergency care for persons injured by deadly force, was both grossly negligent and wanton.

61. Named Defendants' failure to properly train their respective employees on the appropriate circumstances to use deadly force, and on the proper use of emergency care for persons injured by deadly force, resulted in the deprivation of Ricky Duncan's 4th Amendment Constitutional rights.

62. As a direct and proximate result of the Named Defendants' respective failures to train and supervise their employees, Plaintiff suffered damages.

**COUNT THREE: FALSE ARREST VIOLATION OF 42 U. S. C. A. § 1983**

63. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

64. Fictitious Defendant "G" pulled-over Ricky Duncan without probable cause, thereby causing the resulting attempted arrest and damages a false arrest.

65. Fictitious Defendant "G's" reason for initially pulling over Ricky Duncan was a ruse, a pretext.

66. The reason given by Fictitious Defendant "G" – that the car's rear-view mirror was "too low" – is not an equipment requirement recognized by Alabama law.

67. Fictitious Defendant "G" either lied about rear view mirrors needing to be a certain height, or he was mistaken about Alabama's law with regard to rear view mirrors. Regardless, under either scenario—lie or mistake—the reason given by Fictitious Defendant "G" constituted a pretext that does not support a finding of probable cause. This is because an officer's mistake of law cannot legally provide objective grounds for reasonable suspicion or probable cause required to justify a traffic stop.

68. Furthermore, Fictitious Defendant "G" further committed false arrest by lying to Ricky Duncan about outstanding warrants for his arrest, when no such warrants existed at that time.

69. Fictitious Defendant "G's" lies about the car's rear-view mirror and nonexistent warrants were insufficient to legally provide an objective basis for reasonable suspicion or probable cause, making the traffic stop at issue, and subsequent seizure, a violation of Duncan's rights under the Fourth and Fourteenth Amendments.

70. As a direct and proximate cause of Fictitious Defendant "G's" mistake of law and resulting unlawful arrest, Plaintiff was deprived of his constitutional rights and liberties within the meaning of 42 U. S. C. A. § 1983, including: his Fourteenth Amendment liberty interest to be free from false arrest; his Fourth Amendment liberty interest to be free from false arrest; and Fourteenth Amendment liberty interest in an expectation of minimal standards for treatment with respect to safety, health well-being and security.

## COUNT FOUR: ASSAULT AND BATTERY

71. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

72. Without Plaintiff Ricky Duncan's consent, Defendant Officers (Fictitious Defendants "A" through "I") touched the person of the Plaintiff in an angry and hostile manner by shooting at him repeatedly, and hitting him with six (6) bullets.

73. The actions of the Defendants constituted an assault and battery.

74. As a proximate result of the wrongful touching by the Defendant Officers, Ricky Duncan suffered damages.

## COUNT FIVE: NEGLIGENCE

75. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

76. Defendants owed duties to the Plaintiff.

77. Defendants breached their duties.

78. Defendants' breaches of their duties were both reckless and wanton.

79. As a direct and proximate result of Defendants' breaches, the above-named Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for judgment to be entered against Defendants and Fictitious Defendants, joint and several where permitted by law and/or individually where permitted by law, in amounts to be determined by the trier of fact, and for further exemplary and/or punitive damages to the extent permitted by law. Plaintiff also demands the costs of this action, attorneys' fees, expenses, and interest on the judgment as allowed by law.

Dated:   March 14, 2019

**PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY**

                                                  <u>s/ H. Arthur Edge, III</u>
                                                  H. Arthur Edge, III (EDG004)
                                                  Attorney for Plaintiff

**OF COUNSEL:**
ARTHUR EDGE, P.C.
2320 Highland Avenue South, Suite 175
Birmingham, Alabama 35205
(205) 453-0322
(205) 453-0326 (fax)
art@edgelawyers.com

**<u>SERVE VIA CERTIFIED MAIL:</u>**

**Bibb County Sheriff's Office**
183 S.W. Davidson Drive
Centreville , AL 35042
Phone: (205) 926-4683

**Sheriff of Bibb County, Jody Wade**
183 S.W. Davidson Drive
Centreville, Alabama 35042

**The City of Brent, Alabama**
P.O. Box 220
Brent, Alabama 35034

**The Brent Police Department**
P.O. Box 220
Brent, Alabama 35034

**The City of Centreville, Alabama**
1270 Walnut Street
Centreville, Alabama 35042

**The Centreville Police Department**
1254 Walnut Street
Centreville, Alabama 35042